UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

*FILED*

FEB 07 2011

U.S. CLERK'S OFFICE
INDIANAPOLIS, INDIANA

Rik Lineback, Regional Director
of the Twenty-Fifth Region of the
National Labor Relations Board,
for and on behalf of the
NATIONAL LABOR RELATIONS BOARD
      Petitioner

      v.

CIVIL NO.

**1 : 11 -cv- 0188 SEB -MJD**

MARSH SUPERMARKETS, INC.
      Respondent

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT
OF PETITION FOR INJUNCTION UNDER SECTION 10(j)
OF THE NATIONAL LABOR RELATIONS ACT, AS AMENDED

**TABLE OF CONTENTS**

I.    STATEMENT OF THE CASE.................................................................................. 1

II.   THE STATUTORY SCHEME PURSUANT TO WHICH INJUNCTIVE RELIEF
     IS SOUGHT.......................................................................................................... 4

A.   "Likelihood Of Success"....................................................................................... 6

B.   Balancing The Equities ......................................................................................... 6

III.  STATEMENT OF THE FACTS ............................................................................. 8

A.   Background ............................................................................................................ 8

B.   Union Campaign .................................................................................................... 8

C.   Discharge of Tony Massey .................................................................................... 9

D.   Related Unlawful Conduct at the Georgetown Road Store ................................. 11

IV.  INJUNCTIVE RELIEF IS JUST AND PROPER IN THIS CASE UNDER
     TRADITIONAL EQUITY ANALYSIS.................................................................. 12

A.   The Regional Director's Likelihood Of Success On The Merits Of The
     Administrative Complaint Allegations ................................................................. 13

B.   Petitioner Suffers Irreparable Injury If The Injunction Is Not Granted And The
     Public Interest Will Be Served By The Grant Of Injunctive Relief ......................... 20

C.   The Balance Of Threatened Harm Favors The Grant Of Injunctive Relief.............. 23

V.   CONCLUSION...................................................................................................... 24

**Cases**

Alliance for Wild Rockies v. Cotrell, 613 F.3d 960 (9th Cir. 2010)
     amended and superseded by 622 F.3d 1045 (9th Cir. 2010),
     withdrawn and superseded on denial of rehearing en banc, ---F. 3d
     ---2011 WL 208360 (9th Cir. Jan. 25, 2011) ........................................................ 5

Amoco Prod. Co. v. Village of Gambell, 480 U.S. 531 (1987).................................... 6, 20

Arlook v. S. Lichtenberg & Co., Inc., 952 F.2d 367, 370, 373-74, 139
     LRRM 2297 (11th Cir. 1992) .............................................................................. 22

Asseo v. Centro Medico del Turabo, Inc., 900 F.2d 445 (1st Cir. 1990) ............... 7, 21, 22

Avondale Industries, Inc., 329 NLRB 1064, 1223, 1292 (1999)....................................... 19

Barbour v. Central Cartage, Inc., 583 F.2d 335 (7th Cir. 1978)....................................... 24

Bloedorn v. Francisco Foods, Inc., 276 F.3d 270 (7th Cir.2001) .............................. passim

Bloedorn v. Teamsters Local 695, 132 LRRM 3102, 3109-3110 (W.D.
     Wisc. 1989)............................................................................................................. 23

Broyhill Co., 260 NLRB 1366, 1367 (1982) ..................................................................... 13

C & W Super Markets, Inc. v. NLRB, 581 F.2d 618, 625-26 (7th Cir.
     1978) ...................................................................................................................... 19

Central Transport, Inc. v. NLRB, 997 F.2d 1180, 1191 (7th Cir. 1993) .......................... 14

Coop, Inc. v. John Hancock Life Ins. Co., 582 F. 3d 721, 725 (7th Cir.
     2009) ......................................................................................................................... 5

D'Amico v. U.S. Service Industries, Inc., 867 F. Supp. 1075, 1092 (D.
     D.C. 1994 .............................................................................................................. 23

Eisenberg v. Wellington Hall Nursing Home, Inc., 651 F.2d 902 (3d Cir.
     1981) .............................................................................................................. 7, 20, 22

Emerson Electric Co., 287 NLRB 1065 (1988) ................................................................ 17

Gaines Electric Co., 309 NLRB 1077 (1992) ................................................................... 13

Gottfried v. Frankel, 818 F.2d 485 (6th Cir. 1987)............................................................. 6

Hoosier Energy Rural Elec. Coop, Inc. v. John Hancock Life Ins. Co., 582
     F.3d 721, 725 (7th Cir. 2009) ................................................................................. 5

Industrial Wine Products, Inc., 317 NLRB 190, 194-195 (1995)...................................... 18

ITT Federal Services Corporation, 335 NLRB 1, 6-7 (2001)............................................ 18

Judge v. Quinn, 612 F.3d 537 (7th Cir. 2010), amended on denial of
     rehearing, 387 Fed.Appx. 629 (7th Cir. July 22, 2010).......................................... 5

Justak Bos. & Co. v. NLRB, 664 F.2d 1074, 1077 (7th Cir. 1981)................................... 16

Kinney v. Pioneer Press, 881 F.2d 485 (7th Cir. 1989)...................................... 4, 6, 11, 19

Lineback v. Spurlino Materials, LLC, 546 F.3d 491 (7th Cir. 2008) ........................ passim

Loparex, LLC v. NLRB, 591 NLRB F.3d 540, 548 (7th Cir. 2009) .................................. 19

Manno Electric, Inc., 321 NLRB 278, 280 (1996) enforced, 127 F.3d 34
(5th Cir. 1997)........................................................................................................ 12

Miller v. California Pacific Med. Ctr., 19 F.3d 449 (9th Cir. 1994)............................. 6, 20

NLRB v. Electro-Voice, Inc., 83 F.3d 1559, 1566 (7th Cir. 1996) cert.
denied, 519 U.S. 1055 (1997) ............................................................. 4, 5, 6, 11, 21

NLRB v. Gerig's Dump Trucking, Inc., 137 F.3d 936, 943-44 (7th Cir.
1998) ........................................................................................................................ 19

NLRB v. Henry Colder Co., 447 F.2d 629, 631 (7th Cir. 1971) ...................................... 19

NLRB v. My Store, Inc., 345 F.2d 494, 497 (7th Cir. 1965) cert. denied,
382 U.S. 927 (1965)............................................................................................... 19

NLRB v. P*I*E Nationwide, Inc., 894 F.2d 887 (7th Cir. 1990)........................................ 4

NLRB v. Rain-Ware, Inc., 732 F.2d 1349, 1354 (7th Cir. 1984) ...................................... 14

NLRB v. Shelby Mem'l Hospital Ass'n, 1 F.3d 550, 559 (7th Cir. 1993)........................ 17

NLRB v. Sutherland Lumber Co., 452 F.2d 67, 69 (7th Cir. 1971) .................................. 14

NLRB v. Thor Power Tool Co., 351 F.2d 584, 587 (7th Cir. 1965).................................. 16

Our Way, Inc., 268 NLRB 394, 395 (1983) ..................................................................... 18

Pascarell v. Vibra Screw Inc., 904 F.2d 874, 878-79, 134 LRRM 2458 (3d
Cir. 1990) ................................................................................................................ 22

Petrolane Alaska Gas Service, 205 NLRB 68, 70 (1973)................................................. 17

Pleasant Manor Living Center, 324 NLRB 368 (1997)............................................... 17, 18

Promedica Health Systems, 343 NLRB 1351, 1352 (2004), enforced in
part, 206 Fed. Appx. 405 (6th Cir. 2006), cert. denied, 549 U.S.
1338 (2007)............................................................................................................. 17

Pye v. Excel Case Ready, 238 F.3d 69, 75, (1st Cir. 2001)........................................ 21, 22

Roland Machinery Co. v. Dresser Industries, 749 F.2d 380 (7th Cir. 1984)...................... 6

Saginaw Control and Engineering, Inc., 339 NLRB 541, 544 (2003)............................... 19

SCA Tissue North America LLC v. NLRB, 371 F. 3d 983, 991 (7th Cir.
2004) ....................................................................................................................... 16

Sharp v. Webco Indus., Inc., 225 F.3d 1130, 1135, 1136, 165 LRRM 2353
(10th Cir. 2000)...................................................................................................... 22

Squillacote v. Local 248, Meat & Allied Food Workers, 534 F.2d 735 (7th
Cir. 1976)............................................................................................................. 6, 19

Stoddard-Quirk Mfg. Co., 138 NLRB 615, 620-622 (1962.............................................. 19

Titus Electric Contracting, Inc., 355 NLRB No. 222, slip op. at 34 (2010).................... 18

Tres Estrellas de Oro, 329 NLRB 50, 51 (1999) ....................................................... 17, 19

Winter v. National Resources Defense Council, 555 U.S. 7, 129 S.Ct. 365
(2008)................................................................................................................ 5

Wright Line, 251 NLRB 1083, 1089 (1980) enforced, 662 F.2d 899 (1st
Cir. 1981), cert. denied, 455 U.S. 989 (1982).................................................. 13, 16

## Statutes

29 U.S.C. § 151 et seq............................................................................................... 1

29 U.S.C. § 157......................................................................................................... 3, 11

29 U.S.C. § 158(a)(1) and (3) ............................................................................... 2, 11, 12

29 U.S.C. § 158(a)(5)............................................................................................... 11

29 U.S.C. § 160(b) .................................................................................................. 1, 2

29 U.S.C. § 160(j).................................................................................................... 1, 3

## Other Authorities

S. Rep. No. 105, 80th Cong., 1st Sess. (1947), reprinted in 1 Legislative
History of the Labor Management Relations Act of 1947 (1947)
(Government Printing Office 1985)....................................................................... 4

UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

Rik Lineback, Regional Director
of the Twenty-Fifth Region of the
National Labor Relations Board,
for and on behalf of the
NATIONAL LABOR RELATIONS BOARD
          Petitioner

          v.                                                    CIVIL NO.

MARSH SUPERMARKETS, INC.
          Respondent

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT
OF PETITION FOR INJUNCTION UNDER SECTION 10(j)
OF THE NATIONAL LABOR RELATIONS ACT, AS AMENDED

I.     STATEMENT OF THE CASE

Petitioner is the Regional Director of Region Twenty-five of the National Labor

Relations Board (herein called the Board), the Federal Agency responsible for the administration

and enforcement of the National Labor Relations Act (herein called the Act).[1]  As stated in the

Petition for Injunction, the statutory authority for this cause of action is Section 10(j) of the Act

[29 U.S.C. § 160(j)], which authorizes the Board to petition this Court for temporary injunctive

relief, pending the Board's administrative proceeding, after an unfair labor practice complaint

has been issued under Section 10(b) of the Act [29 U.S.C. § 160(b)] charging a respondent with

the commission of unfair labor practices.

On June 10, 2010,[2] the United Food and Commercial Workers Union, Local Union No.

700, a/w United Food and Commercial Workers International Union (herein called the Union),

---

[1] 29 U.S.C. § 151 et seq.
[2] All dates herein are in 2010 unless otherwise noted.

pursuant to the provisions of the Act, filed a charge with the Board against Marsh Supermarkets, Inc. (herein called the Respondent) in Case 25-CA-31502 Amended and on September 22 filed an amended charge in Case 25-CA-31502 Amended.  On August 25, the Union filed a charge with the Board against Respondent in Case 25-CA-31576 Amended and on October 6 and October 29 filed an amended charge in Case 25-CA-31576 Amended.  On September 15, the Union filed a charge with the Board against Respondent in Case 25-CA-31607 Amended and on December 28 filed an amended charge in Case 25-CA-31607 Amended.  The charges allege that Respondent has engaged in, and is engaging in, unfair labor practices within the meaning of Section 8(a)(1) and (3) of the Act [29 U.S.C. § 158(a)(1) and (3)].  On November 29, following a field investigation during which all parties had an opportunity to submit evidence upon the said charges in Cases 25-CA-31502 amended and 25-CA-31576 amended, the Acting General Counsel of the Board, on behalf of the Board, by the Regional Director of Region Twenty-Five, issued an order consolidating cases, consolidated complaint and notice of hearing in those cases, pursuant to Section 10(b) of the Act [29 U.S.C. § 160(b)], alleging that Respondent has engaged in, and is engaging in, unfair labor practices within the meaning of Section 8(a)(1) and (3) of the Act [29 U.S.C. § 158(a)(1) and (3)].  On December 29, a consolidated complaint and notice of hearing was issued incorporating allegations from the charge in Case 25-CA-31607 Amended together with the allegations from the consolidated complaint in Cases 25-CA-31502 Amended and 25-CA-31576 Amended.  Pursuant to said consolidated complaint, an administrative hearing is scheduled to be held before an administrative law judge of the Board commencing on February 16, 2011.

Briefly stated, the consolidated complaint alleges unfair labor practices arising out of a union organizational campaign taking place at two of Respondent's grocery stores.  Just 10 days

prior to a scheduled Board-conducted election where the employees at one of the grocery stores would decide if they wanted to be represented by the Union, Respondent discharged Tony Massey, the leading employee Union activist at the store, threatened employees with unspecified reprisals, and gave employees the impression that their Union activities were under surveillance. Several weeks prior to this discharge, Respondent announced to employees that union literature would be discriminatorily removed from the employee break room.  Similarly, at the other grocery store involved, Respondent threatened employees with discharge because of their union activities, interrogated employees about their union activities, prohibited employees from discussing the Union while on company time, and prohibited employees from soliciting for the Union on company premises.  As a result of Respondent's unlawful conduct, the Union withdrew its petition for the Board-conducted election and the election was cancelled.

Petitioner submits that there is a substantial likelihood it will prevail on the merits of the consolidated complaint, and that it is therefore just and proper for the Court to grant the requested relief to reinstate Massey, preserve the employees' rights to support a union under Section 7 of the Act [29 U.S.C. § 157], prevent the irreparable erosion of employee support for the Union, and to ensure the efficacy of the Board's final order.

## II.   THE STATUTORY SCHEME PURSUANT TO WHICH INJUNCTIVE RELIEF IS SOUGHT

Section 10(j) of the Act[3] authorizes United States district courts to grant temporary injunctions pending the Board's resolution of unfair labor practice proceedings.  See Lineback v. Spurlino Materials, LLC, 546 F.3d 491, 499 (7th Cir. 2008); Bloedorn v. Francisco Foods, Inc., 276 F.3d 270, 286 (7th Cir. 2001).  Congress recognized that the Board's administrative proceedings often are protracted.  In many instances, absent interim relief, a respondent could accomplish its unlawful objective before being placed under any legal restraint, and it could thereby render a final Board order ineffectual.  See S. Rep. No. 105, 80th Cong., 1st Sess., at pp. 8, 27 (1947), reprinted in 1 Legislative History of the Labor Management Relations Act of 1947 414, 433 (1947) (Government Printing Office 1985), cited in NLRB v. P*I*E Nationwide, Inc., 894 F.2d 887, 891 (7th Cir. 1990).  Thus, Section 10(j) was intended to prevent the potential frustration or nullification of the Board's remedial authority caused by the passage of time inherent in Board administrative litigation.  See Lineback v. Spurlino Materials, LLC, 546 F.3d at 500; Kinney v. Pioneer Press, 881 F.2d 485, 493-94 (7th Cir. 1989).

Section 10(j) directs district courts to grant relief that is "just and proper."  The Seventh Circuit holds that to determine what relief is "just and proper," district courts should apply the general equitable standards for considering requests for preliminary injunctions.  Lineback v. Spurlino Materials, LLC, at 499-500; Bloedorn v. Francisco Foods, 276 F.3d at 286; NLRB v.

---

[3] Section 10(j) [29 U.S.C. § 160(j)] provides:

> The Board shall have power, upon issuance of a complaint as provided in subsection (b) charging that any person has engaged in or is engaging in an unfair labor practice, to petition any United States district court, within any district wherein the unfair labor practice in question is alleged to have occurred or wherein such person resides or transacts business, for appropriate temporary relief or restraining order.  Upon the filing of any such petition the court shall cause notice thereof to be served upon such person, and thereupon shall have jurisdiction to grant to the Board such temporary relief or restraining order as it deems just and proper.

Electro-Voice, Inc., 83 F.3d 1559, 1566 (7th Cir. 1996) cert. denied, 519 U.S. 1055 (1997);

Kinney v. Pioneer Press, 881 F.2d at 490.  The Regional Director is entitled to interim relief

when: (1) the Director has no adequate remedy at law; (2) the labor effort would face irreparable

harm without interim relief, and the prospect of that harm outweighs any harm posed to the

employer by the proposed injunction; (3) "public harm" would occur in the absence of interim

relief; and (4) the Director has a reasonable likelihood of prevailing on the merits of his

complaint.  Lineback v. Spurlino Materials, LLC, at 500; Bloedorn v. Francisco Foods, 276 F.3d

at 286.  The Director bears the burden of establishing the first, third and fourth prongs by a

preponderance of the evidence.  Lineback v. Spurlino Materials, LLC, at 500; Bloedorn v.

Francisco Foods, 276 F.3d at 286.  "The second prong is evaluated on a sliding scale: The better

the Director's case on the merits, the less its burden to prove that the harm in delay would be

irreparable, and vice versa."  Lineback v. Spurlino Materials, LLC, at 500, quoting Bloedorn v.

Francisco Foods, 276 F.3d at 286, 298.  See also, Hoosier Energy Rural Elec. Coop, Inc. v. John

Hancock Life Ins. Co., 582 F.3d 721, 725 (7th Cir. 2009).  Following the Supreme Court's

decision in Winter v. National Resources Defense Council, 555 US 7, 129 S. Ct. 365 (2008), the

Seventh Circuit has continued to apply the sliding scale analysis by noting that "the more harm

an injunction can prevent, the weaker the plaintiff's claim on the merits can be while still

supporting some preliminary relief."  Hoosier Energy Rural Elec. Coop, Inc. v. John Hancock

Life Ins. Co., 582 F. 3d 721, 725 (7th Cir. 2009).  See also, Judge v. Quinn, 612 F.3d 537 (7th

Cir. 2010), amended on denial of rehearing, 387 Fed.Appx. 629 (7th Cir. July 22, 2010)

(unpublished order), in which the Seventh Circuit noted that the greater the likelihood of success

on the merits, the less net harm the injunction must prevent in order for preliminary relief to be warranted".[4]  Judge v. Quinn, at 546.

### A.   "Likelihood Of Success"

The Regional Director makes a threshold showing of likelihood of success by showing that its chances are "better than negligible." Lineback v. Spurlino Materials, LLC, at 502; NLRB v. Electro-Voice, 83 F.3d at 1568.  In assessing whether the Regional Director has met this burden, a district court must take into account that Section 10(j) confers no jurisdiction to pass on the ultimate merits of the unfair labor practice case, Lineback v. Spurlino Materials, LLC, at 502; NLRB v. Electro-Voice, 83 F.3d at 1567, and that, ultimately, the Board's determination on the merits will be given considerable deference, Bloedorn v. Francisco Foods, 276 F.3d at 287. Thus, in a 10(j) proceeding, the district court should determine "whether the Director has 'some chance' of succeeding on the merits." Lineback v. Spurlino Materials, LLC, at 502, quoting Bloedorn v. Francisco Foods, 276 F.3d at 287.  The district court should not resolve credibility conflicts in the evidence.  NLRB v. Electro-Voice, 83 F.3d at 1570, 1571.  See also, Gottfried v. Frankel, 818 F.2d 485, 493, 494 (6th Cir. 1987).

### B.   Balancing The Equities

The irreparable harm to be avoided in a Section 10(j) case is the threatened frustration of the remedial purpose of the Act and of the public interest in deterring continued violations. Squillacote v. Local 248, Meat & Allied Food Workers, 534 F.2d 735, 744 (7th Cir. 1976), cited

---

[4] See also, Alliance for Wild Rockies v. Cotrell, 613 F.3d 960 (9th Cir. 2010)  amended and superseded by 622 F.3d 1045 (9th Cir. 2010), withdrawn and superseded on denial of rehearing en banc, ---F. 3d ---2011 WL 208360 (9th Cir. Jan. 25, 2011).

with approval in <u>Kinney v. Pioneer Press</u>, 881 F.2d at 491.[5] In evaluating whether irreparable injury to the policies of the Act is threatened, as well as in balancing such harms against any threatened harm to the respondent or the public interest, the district court must "take into account the probability that declining to issue the injunction will permit the allegedly unfair labor practice to reach fruition and thereby render meaningless the Board's remedial authority." <u>Miller v. California Pacific Med. Ctr.</u>, 19 F.3d 449, 460 (9th Cir. 1994), citing <u>Amoco Prod. Co. v. Village of Gambell</u>, 480 U.S. 531, 545 (1987). <u>Accord Asseo v. Centro Medico del Turabo, Inc.</u>, 900 F.2d 445, 455 (1st Cir. 1990) (Section 10(j) relief is appropriate whenever the circumstances create a reasonable apprehension that, absent an injunction, the efficacy of the Board's final order may be nullified or frustrated during regular Board litigation). "In appropriate circumstances, the same evidence that establishes the Director's likelihood of proving a violation of the NLRA may provide evidentiary support for a finding of irreparable harm." <u>Bloedorn v. Francisco Foods</u>, 276 F.3d at 297-98. "[T]he interest at stake in a section 10(j) proceeding is 'the public interest in the integrity of the collective bargaining process.'" <u>Id.</u> at 300, quoting <u>Eisenberg v. Wellington Hall Nursing Home, Inc.</u>, 651 F.2d 902, 206-07 (3d Cir. 1981).

---

[5] <u>NLRB v. Electro-Voice</u> notes that when equitable relief is the ultimate relief sought, an additional element "no adequate remedy at law" is part of traditional equity analysis for which petitioner must show that an award of damages would be "seriously deficient." 83 F.3d at 1567, quoting <u>Roland Machinery Co. v. Dresser Industries</u>, 749 F.2d 380, 386-87 (7th Cir. 1984). As here, a Board proceeding resulting in permanent injunctive relief is the sole avenue of relief for conduct made unlawful under the National Labor Relations Act. Thus, in Section 10(j) cases, the "adequate remedy at law" inquiry is whether, in the absence of immediate relief, the harm flowing from the alleged violation cannot be prevented or fully rectified by the final judgment. <u>Roland Machinery Co. v. Dresser Industries, Inc.</u>, 749 F.2d at 386. This inquiry effectively is the same as the question of "irreparable harm" to the petitioner. <u>NLRB v. Electro-Voice</u>, 83 F.3d at 1572-73.

III.   STATEMENT OF THE FACTS

A.   Background

Respondent operates more than 100 retail grocery stores located throughout Indiana and Ohio. Respondent's employees are not represented by a labor organization for purposes of collective bargaining. Sometime in the spring of 2009, the Union started an organizational effort to organize Respondent's employees. Towards the end of 2009, the Union's efforts to organize employees became more focused on two stores, one located in Beech Grove, Indiana (herein the Beech Grove store) and another one located on Georgetown Road, Indianapolis (herein the Georgetown Road store).

B.   Union Campaign

Tony Massey was hired by Respondent at its Beech Grove store sometime in August 2009 as a clerk in the meat department. Sometime in December 2009, Massey became an active Union supporter. Massey frequently discussed the Union with his coworkers and attended multiple Union meetings throughout 2010. On June 15, Massey signed a letter, along with two other Beech Grove employees, that was sent to Respondent's Chief Executive Officer Frank Lazeran, asking him to respond to concerns that store managers had given employees the impression that the store would close and that employees would be fired if they formed a Union. Massey also placed several different Union flyers in the employees' break room at the Beech Grove store during the summer months. Massey also wore to work a blue and yellow pro-Union rubber wristband that said "History in the Making". The Union's campaign colors are blue and yellow. These colors are used in the Union's flyers and on the Union's Marsh campaign website www.buildabettermarsh.org. Only about four employees at the store who supported the Union wore the wristbands to work. On one occasion Beech Grove Store Manager Russ Bechtel

grabbed Massey's wristband to read it and asked what it was but after reading it Bechtel just walked away.

On July 9, the Union filed with the Board a petition for an election at the Beech Grove store. The Board scheduled an administrative hearing concerning an issue about the eligibility of some employees to vote in the Board-conducted election. The hearing was set for July 20. The Union subpoenaed Tony Massey to be a witness at the hearing. Although he did not testify at the hearing, Massey submitted his subpoena to Store Manager Bechtel and was present at the hearing. Subsequent to the administrative hearing, the Board issued an order scheduling the election for the Beech Grove store for September 17.

At about the end of August 2010, Respondent's Vice-President of Human Resources Dave Redden told employees at a meeting at the Beech Grove store that the Respondent was permitted to remove employees' union literature from the employees' break room tables. This meeting was a mandatory Respondent-led union campaign meeting. Respondent effectively admitted its unlawful action by posting an undated and unsigned notice to employees on plain white paper in the break room on about September 3 which purportedly repudiated Redden's unlawful statement and informed employees of their right to leave union literature in the break room.

C.    Discharge of Tony Massey

On September 7, Tony Massey overslept and arrived about 25 minutes late for work at the Beech Grove store. Massey's supervisor, Meat Department Manager Patrick Oppedahl, warned Massey that his tardiness was starting to become a problem, but Massey worked for the next 6 hours without incident. While Massey was in his car in Respondent's parking lot during his lunch break, Respondent's Beech Grove Store Manager, Russ Bechtel, approached Massey's

vehicle and declared that he looked "pretty rough". Massey volunteered that he had been drinking on the holiday night before (Labor Day) and was "hung over". Store Manager Bechtel commented that he could smell the alcohol on Massey and that everyone has come to work hung over before, but it makes for a rough day. Massey completed his lunch break and returned to work in order to complete the remainder of his shift (approximately 1 hour remained).

At about the same time on September 7, a long time employee of Respondent at the Beech Grove store received a telephone call from Meat Manager Oppedahl. Oppedahl told this employee that someone had reported to Store Manager Bechtel that she smelled alcohol on Tony Massey. Oppedahl said that Bechtel had asked him if he smelled alcohol on Massey too and that he had stated that he did not. Oppedahl also informed this employee that Store Manager Bechtel had left the meat prep room for a meeting and that when Bechtel returned, he was upset. Oppedahl stated that upon Bechtel's return from the meeting, Bechtel stated, "This goddamn union shit. It's all Tony's fault."

About five minutes after returning from lunch, Store Manager Bechtel took Tony Massey to a health clinic for an alcohol breathalyzer test and drug screen. Massey's breathalyzer analysis test results reflected a 0.034 level at 2:54 pm and 0.025 level at 3:12 pm and that he passed his drug screen. On their way back to the store, Store Manager Bechtel told Massey that he had seen Respondent both fire people for this type of offense and give them second chances, depending on the circumstances. Massey was sent home for the afternoon and he later received a telephone call from Bechtel around 5:15 pm informing him of his termination for violation of Respondent's Drug and Alcohol Policy.

Although Respondent has a Drug and Alcohol Policy, employees at the Beech Grove store have smelled alcohol on other employees on numerous occasions, reported it, and

10

Respondent has not taken the employee in question to a health clinic to verify the report. Employees have also seen other employees be obviously "hung over" at work and not be sent home early and not be tested.

With the termination of Massey being only ten days prior to the scheduled election, the Union decided to withdraw its petition for a Board-conducted election and the scheduled election was cancelled.

### D.     Related Unlawful Conduct at the Georgetown Road Store

Respondent engaged in other unlawful actions at its Georgetown Road store in response to the Union's organizing efforts in the same campaign to represent Marsh employees. For instance, in early April, Respondent's Meat Department Manager at that store, Garland Simpson, told employees that it would be easier for Marsh to fire them than to have to deal with the Union. On April 17, the Union held a public Union rally on the Indianapolis University Purdue University (IUPUI) campus concerning the Union's organization campaign at Marsh. Several employees of Respondent, including employees from the Georgetown Road store, were present and also made speeches to the public in attendance. The following Monday, April 19, Store Manager Mike Vickery, in the presence of store employees, asked Simpson if he knew if anyone from the store had participated at the Union rally. The very next day, Simpson told employees that Vickery knew who among them had been speakers at the rally and had asked Simpson to tell him if he knew which employees were union supporters. Simpson also told employees that Vickery had ordered him to inform employees to be sure that they did not discuss the Union on company time. On about late-April, some employees at the Georgetown Road store passed around a pro-Union petition on their time off. The next day, Store Manager Vickery and Respondent's Human Resources Representative Dave Branson met with employees and told

them that they could not engage in solicitation for the Union on company premises. When employees defended their actions by telling management that any solicitation had occurred outside of their work areas, Vickery told them that Respondent had a pretty good idea who had signed the pro-Union petition that had been passed around. Branson also told employees that Respondent had a no-solicitation policy and that whatever it was that the employees were passing around, they were not allowed to do it on company premises. Further, Branson asked employees to tell him what their concerns were at the store.

IV.  **INJUNCTIVE RELIEF IS JUST AND PROPER IN THIS CASE UNDER TRADITIONAL EQUITY ANALYSIS**

Section 10(j) directs district courts to grant relief that is "just and proper." The Seventh Circuit holds that to determine what relief is "just and proper," district courts should apply the general equitable standards for considering requests for preliminary injunctions. Lineback v. Spurlino Materials, LLC, at 499-500; Bloedorn v. Francisco Foods, 276 F.3d at 286; NLRB v. Electro-Voice, Inc., 83 F.3d 1559, 1566 (7th Cir. 1996) cert. denied, 519 U.S. 1055 (1997); Kinney v. Pioneer Press, 881 F.2d at 490. The Regional Director is entitled to interim relief when: (1) the Director has no adequate remedy at law; (2) the labor effort would face irreparable harm without interim relief, and the prospect of that harm outweighs any harm posed to the employer by the proposed injunction; (3) "public harm" would occur in the absence of interim relief; and (4) the Director has a reasonable likelihood of prevailing on the merits of his complaint. Lineback v. Spurlino Materials, LLC, at 500; Bloedorn v. Francisco Foods, 276 F.3d at 286. The Director bears the burden of establishing the first, third and fourth prongs by a preponderance of the evidence. Lineback v. Spurlino Materials, LLC, at 500; Bloedorn v. Francisco Foods, 276 F.3d at 286.

12

A.   The Regional Director's Likelihood Of Success On The Merits Of The
     Administrative Complaint Allegations

Petitioner believes there is a substantial likelihood that he will be successful in the

underlying administrative litigation now pending before the Board in proving that Respondent's

discharge of Tony Massey and Respondent's unlawful interference with employees' right to

engage in union activity violated Section 8(a)(1) and (3) of the Act [29 U.S.C. § 158(a)(1) and

(3)].

1.     The Discharge of Massey

To prove that an employee's discharge violates Section 8(a)(1) and (3) of the Act [29

U.S.C. § 158(a)(1) and (3)], the General Counsel must first prove, by a preponderance of the

evidence, that the employee's protected activity was a motivating factor in the employer's

decision to discharge the employee. Manno Electric, Inc., 321 NLRB 278, 280 (1996) enforced,

127 F.3d 34 (5th Cir. 1997).  Once the General Counsel makes a showing of discriminatory

motivation, the burden shifts to the employer to demonstrate that the same action would have

taken place even in the absence of the protected conduct.  Wright Line, 251 NLRB 1083, 1089

(1980) enforced, 662 F.2d 899 (1st Cir. 1981), cert. denied, 455 U.S. 989 (1982).

The discharge of Tony Massey was clearly motivated by his Union activity.  Massey

openly and visibly supported the Union.  He actively participated in Union meetings, talked to

his coworkers about the Union, distributed Union-related flyers at work, and wore a pro-Union

wristband to work every day.  Respondent was undeniably aware of Massey's Union support.

Just hours before Massey's discharge, his direct supervisor Patrick Oppedahl told another store

employee that right after returning from a meeting, Store Manager Russ Bechtel blurted that

Tony was to blame for the Union "shit".  Just hours after making this comment, Bechtel took

Tony Massey to a health clinic for an alcohol breathalyzer test and drug screen.  Massey had

been working without incident for over six hours by the time that Bechtel ordered him to the health clinic. Bechtel's comment clearly shows Respondent's hostility against the Union. Respondent also demonstrated hostility against employees' union activities just a few weeks earlier when Respondent's Vice-President of Human Resources, Dave Redden, made unlawful statements to store employees at a meeting stating that Respondent had a right to remove Union literature from the employees' break room.[6] Respondent discharged Massey the same day that Bechtel expressed his anger about Massey's Union activities.[7] The foregoing demonstrates that Massey's union activities were a motivating factor in his discharge.

The burden thus shifts to Respondent to prove that it would have discharged Massey even in the absence of his union activities. Respondent asserts that Massey was discharged for testing positive for alcohol and that he was tested based on Store Manager Bechtel's reasonable suspicion that he was under the influence of alcohol. However, Massey's direct supervisor Oppendahl, who shared the same work area with Massey, did not suspect Massey of being under the influence at work and did not smell alcohol on him. Respondent's basis for sending Massey to be tested arose after Massey had almost completed his work shift and after Bechtel

---

[6] Respondent may argue that it rectified its unlawful conduct by posting a notice to employees informing them that there was no rule against leaving literature in the break room. However, this posting does not cure the violation of the Act. The posting was not on company letterhead, was unsigned and undated. It was also posted for a short period of time. Additionally, the notice was posted in the face of unremedied unfair labor practices. See Broyhill Co., 260 NLRB 1366, 1367 (1982) and Gaines Electric Co., 309 NLRB 1077 (1992) (for a repudiation to be effective, it must be timely, unambiguous, specific in nature to the coercive conduct, free from other proscribed conduct, and adequately published to the employees involved).

[7] See NLRB v. Rain-Ware, Inc., 732 F.2d 1349, 1354 (7th Cir. 1984) ("Timing alone may suggest anti-union animus as a motivating factor in an employer's action"); Central Transport, Inc. v. NLRB, 997 F.2d 1180, 1191 (7th Cir. 1993) ("Direct and uncontroverted evidence of anti-union animus is not required … The Board may consider the timing of the adverse action as evidence of motive); NLRB v. Sutherland Lumber Co., 452 F.2d 67, 69 (7th Cir. 1971) ("The abruptness of a discharge and its timing are persuasive evidence as to motivation.").

demonstrated his anger regarding Massey's Union involvement.  Even though Massey admitted

to Bechtel after being questioned by him that he was "hung over" from the night before, Massey

had clearly not given Respondent any indication that he was under the influence of alcohol

during his shift.

Respondent may assert that it has a zero-tolerance drug and alcohol policy and that it has

discharged other employees pursuant to this policy.  Respondent's policy states that it may

subject an employee to testing for controlled substances if a supervisor has reasonable suspicion

that the employee is under the influence of a controlled substance.  Respondent's asserted basis

for having reasonable suspicion to subject Massey to testing is suspect.  Massey had worked

most of his shift alongside supervisor Oppedahl without incident.  Further, Oppedahl told an

employee that he did not smell alcohol on Massey.  Respondent will likely assert that Store

Manager Bechtel smelled alcohol on Massey when he encountered Massey at the time clock at

lunch time and that Massey admitted that he was under the influence.  However, Massey did not

admit that he was under the influence at work only that he felt hung over.  Obviously, admitting

to being hung over is not an admission to being under the influence of alcohol.  Despite

Oppendahl's assessment that Massey did not smell of alcohol, Bechtel submitted Massey to the

breathalyzer test.  Respondent may argue that it had enough evidence to justify having

reasonable suspicion to submit Massey to testing but the fact is that other employees have been

hung over at work and not been submitted to testing.  In fact, the store's General Merchandise

Manager, Diana Trainor, has been known to be at work not only hung over but smelling of

alcohol.  On one occasion Trainor was so obviously hung over that several employees

commented that she should have stayed home.  Trainor was not sent home or submitted to

testing.  At another time, Supervisor Oppendahl reported to Store Manager Bechtel that Trainor

15

smelled of alcohol but again Trainor was not sent to a clinic for testing. Respondent asserts that it was unable to confirm the unsolicited reports of Trainor smelling of alcohol and thus did not have the requisite reasonable suspicion to test her on either occasion. Such contention is simply not believable. On one occasion when a store employee reported to Bechtel that Trainor smelled of alcohol, Bechtel told the employee that he had warned Trainor that if it happened again, he would drive her to be tested himself. Thus, it has been demonstrated that Bechtel has used his discretion in testing employees regardless of whether he has reasonable suspicion and regardless of Respondent's policy.

Respondent may argue that it has terminated other employees with positive breathalyzer test results. However, Respondent has not had any other employee at this store be discharged on the basis of a positive breathalyzer test result. During the last two years, Respondent has discharged four employees for testing positive at other stores. One such employee was terminated with a reading of 0.101 and another one was found to be consuming alcohol at work. Tony Massey's test score is more than half lower than any of the other employees tested and discharged in the last two years. In addition, Massey had slept and then been at work for six hours before being submitted to the breathalyzer test making it highly unlikely that he had any alcohol detectable on his breath. Furthermore, Bechtel told Massey on their way back from the health clinic that he had seen employees be given a second chance after a positive test and that the decision depended on the circumstances.

Based on the above, Respondent has not satisfied its burden under Wright Line, supra, because it cannot rely on its drug and alcohol policy as a reason for the discharge of Massey when it has applied this policy discriminatorily. See, SCA Tissue North America LLC v. NLRB, 371 F. 3d 983, 991 (7th Cir. 2004) ("SCA's past willingness to give second and third chances to

poor employees with a myriad of performance problems, but not to [a union supporter], smacks of disparate treatment"). See also, Great Lakes Warehouse Corp. v. NLRB, 239 F.3d 886, 891 (7th Cir. 2001) (finding that disparate treatment of union supporter can defeat Wright Line defense and support an 8(a)(3) finding).  Furthermore, when the Employer's reasons offered for its actions appear to be an excuse rather than a reason for its retaliatory action, this defense will not be accepted. See, NLRB v. Thor Power Tool Co., 351 F.2d 584, 587 (7th Cir. 1965) quoted in Justak Bos. & Co. v. NLRB, 664 F.2d 1074, 1077 (7th Cir. 1981).  Respondent simply submitted Massey to testing in retaliation for his known union activity.

    2.    Other Unlawful Conduct

    There is a strong likelihood that the Region will prevail in proving that Respondent violated the Act by making threats of unspecified reprisals, statements giving the impression that employees' union activities were under surveillance, statements to employees that Respondent would disparately remove union literature from non-work areas, threats of discharge, interrogating employees about their union sympathies and by promulgating and maintaining rules which prohibit employees from discussing the union on company time and engaging in union solicitation on Respondent's premises.[8]

    As discussed above, at the Georgetown Road store, in early April, Respondent's Meat Department Manager Garland Simpson told employees that it would be easier for Marsh to fire them than to have to deal with the Union.  Making threats of discharge if employees engage in Union activity violates the Act. Petrolane Alaska Gas Service, 205 NLRB 68, 70 (1973). Following the April 17 public Union rally at the IUPUI campus, Store Manager Mike Vickery, in

---

[8] With respect to the Section 8(a)(1) violations [29 U.S.C. § 158(a)(1)], see generally NLRB v. Shelby Mem'l Hospital Ass'n, 1 F.3d 550, 559 (7th Cir. 1993) (test is reasonable tendency to interfere with exercise of statutory rights); NLRB v. Rich's Precision Foundry Inc., 667 F.2d 613 (7th Cir. 1981).

the presence of employees, asked Simpson if he knew if anyone from the store had participated

at the Union rally. Making this type of statement in the presence of employees is tantamount to

unlawfully interrogating employees about their union activities and also unlawfully gives the

impression that employees' union activities are under surveillance. See Pleasant Manor Living

Center, 324 NLRB 368, 368 (1997) (interrogation); Tres Estrellas de Oro, 329 NLRB 50, 51

(1999) (impression of surveillance); Emerson Electric Co., 287 NLRB 1065 (1988) (impression

of surveillance); Promedica Health Systems, 343 NLRB 1351, 1352 (2004), enforced in part, 206

Fed. Appx. 405 (6th Cir. 2006), cert. denied, 549 U.S. 1338 (2007) (impression of surveillance).

On April 20, Simpson told employees that Vickery knew who among them had been speakers at

the rally and that Vickery had asked him to tell him if he knew which employees were union

supporters. Similarly, this conduct violates the Act because it creates an impression that

employees' union activities are under surveillance. Tres Estrellas de Oro, supra. Simpson also

told employees that Vickery had ordered him to inform employees to be sure that they did not

discuss the Union on company time. Such a time restriction on employees' discussion of union

activities is unlawful. Industrial Wine Products, Inc., 317 NLRB 190, 194-195 (1995)

(discussing the union on company time). On about April 30, about a day after employees passed

around a pro-Union petition, Store Manager Vickery and Respondent's Human Resources

Representative Dave Branson met with employees and told them that they could not engage in

Union solicitation on company premises. Branson also told employees that Respondent had a

no-solicitation policy and that whatever it was that the employees were passing around, they

were not allowed to do it on company premises. Such a restriction on employees' Union

solicitation activities is unlawful. Our Way, Inc., 268 NLRB 394, 395 (1983) (no solicitation

rule on company time); Titus Electric Contracting, Inc., 355 NLRB No. 222, slip op. at 34 (2010)

(no solicitation rule on company time and company premises); Industrial Wine Products, supra (no union talk on company premises).  Further, Vickery created the impression that employees' union activities were under surveillance when he told employees that Respondent had a pretty good idea who had signed the pro-Union petition that had been passed around.  Tres Estrellas de Oro, supra; ITT Federal Services Corporation, 335 NLRB 1, 6-7 (2001).  Finally, when Branson asked employees to tell him what their concerns were at the store, he unlawfully interrogated them in violation of the Act.  Pleasant Manor Living Center, supra.

Similarly, at the Beech Grove store, Respondent's Human Resources Vice-President Dave Redden told employees at a meeting in August that Union related literature could be and was removed from their break room while other non-Union literature has been allowed to remain.  Such a restriction on the distribution of union literature by employees violates the Act.  Stoddard-Quirk Mfg. Co., 138 NLRB 615, 620-622 (1962) (overly broad no distribution rule); Saginaw Control and Engineering, Inc., 339 NLRB 541, 544 (2003) (discriminatory removal of union posters).  Further, on September 7, Meat Department Manager Oppendahl told employees that Store Manager Bechtel had stated after a company meeting that all of the Union shit was Tony Massey's fault.  Such statement to employees is unlawful because it threatens employees with reprisals because of their union activities and unlawfully creates the impression that

Respondent has employees' union activities under surveillance.  Avondale Industries, Inc., 329

NLRB 1064, 1223, 1292 (1999) (threats of unspecified reprisal); Tres Estrellas de Oro, supra.[9]


   B.   Petitioner Suffers Irreparable Injury If The Injunction Is Not Granted And The
        Public Interest Will Be Served By The Grant Of Injunctive Relief

   The irreparable harm to be avoided in a Section 10(j) case is the threatened frustration of

the remedial purpose of the Act and of the public interest in deterring continued violations.

Squillacote v. Local 248, Meat & Allied Food Workers, 534 F.2d 735, 744 (7th Cir. 1976), cited

with approval in Kinney v. Pioneer Press, 881 F.2d at 491.  In evaluating whether irreparable

injury to the policies of the Act is threatened, as well as in balancing such harms against any

threatened harm to the respondent or the public interest, the district court must "take into account

the probability that declining to issue the injunction will permit the allegedly unfair labor

practice to reach fruition and thereby render meaningless the Board's remedial authority."  Miller

v. California Pacific, 19 F.3d 449, 460 (9th Cir., 1994) (en banc), citing Amoco Prod. Co. v.

Village of Gambell, 480 U.S. 531, 545 (1987).  "In appropriate circumstances, the same

evidence that establishes the Director's likelihood of proving a violation of the NLRA may

provide evidentiary support for a finding of irreparable harm."  Bloedorn v. Francisco Foods,

276 F.3d at 297-98.  "[T]he interest at stake in a section 10(j) proceeding is 'the public interest in

the integrity of the collective bargaining process.'"  Id. at 300, quoting Eisenberg v. Wellington

_____

[9] The Seventh Circuit has affirmed Board orders finding unlawful the types of statements and
conduct engaged in by Respondent as described above.  See, e.g, NLRB v. Gerig's Dump
Trucking, Inc., 137 F.3d 936, 943-44 (7th Cir. 1998) (threats of plant closure and job loss);
NLRB v. Henry Colder Co., 447 F.2d 629, 631 (7th Cir. 1971) (interrogations, promises of
benefits, threats of blackballing and one discharge); C & W Super Markets, Inc. v. NLRB, 581
F.2d 618, 623, 625-26 (7th Cir. 1978) (threats of discharge, interrogations, promises of benefits
and discharges); NLRB v. My Store, Inc., 345 F.2d 494, 497 (7th Cir. 1965) cert. denied, 382
U.S. 927 (1965) (interrogations); Loparex, LLC v. NLRB, 591 F.3d 540, 548 (7th Cir. 2009)
(overly broad no-distribution rule).

Hall Nursing Home, Inc., 651 F.2d 902, 206-07 (3d Cir. 1981).  In the instant case there is a risk

of remedial failure if the Respondent's violations are allowed to continue and are not enjoined.

Section 10(j) relief is equitably necessary in this case to preserve the employees' right to engage

in Union activity, prevent Respondent's unlawful conduct from irreparably eroding employee

support for the Union, and prevent the final Board order in this case from being meaningless.

Without an injunction any later Board order will be largely ineffectual in implementing the

employees' statutory right to freely choose whether to be represented by the Union or any other

labor organization.

The need for an injunction has clearly been revealed by the effect the Respondent's

unlawful conduct has had on the Union's organizing campaign.  The Union withdrew its petition

for a Board-conducted election just days after Massey's discharge and merely days before the

election was scheduled at the Beech Grove store.  Respondent's unfair labor practices have had a

chilling impact on the employees' support for the Union as reflected by the fact that at least three

employees who had been Union supporters before Massey's discharge thereafter told the Union

that they were withdrawing their support and refused any further involvement with the Union.

Additionally, other employees have told the Union that they are afraid for their jobs if they

continue supporting the Union.  Furthermore, Union Organizer for this campaign, Cedric

Burroughs, has had employees not return his calls even though these employees had been

supporting the Union.  The campaign has thus effectively died after Massey's discharge and the

cancellation of the election.  No other employee has stepped forward to assume the lead role at

the Beech Grove store's organizing campaign that Massey had taken.  Without such leaders and

with employees fearing for their jobs, the employees' right to choose whether or not to be

represented by a labor organization has been taken away.  The absence of key union organizers

can contribute to the erosion of support for a nascent union movement.  See Asseo v. Centro

Medico del Turabo, Inc., 900 F.2d 445, 454 (1st Cir. 1990).  Moreover, the fear of employer

retaliation after the firing of union supporters is exactly the "irreparable harm" contemplated by

Section 10(j) of the Act.  Id.; See also, NLRB v. Electro-Voice, Inc., 83 F.3d 1559, 1572 (7th

Cir. 1996) cert. denied, 519 U.S. 1055 (1997) (noting the "chilling effect" on organizing that

often follows the illegal discharge of key union members).  Also, Pye v. Excel Case Ready, 238

F.3d 69, 75 (1st Cir. 2001).

 Interim reinstatement of Massey is also crucial in this case to protect the employee

leaders of the Union in the unit at the Beech Grove store.  There is the distinct danger that,

without an interim reinstatement order, the leading Union adherents will be forever lost from this

unit and Respondent will effectively accomplish its unlawful goal of permanently ridding its

work place of union supporters.  This perspective has found judicial support under Section 10(j)

of the Act.[10]  Thus, if Massey is required to wait for a Board order to return to work, he may be

forced to seek employment elsewhere in the interim and could then choose not to return to work

for Respondent.  Turnover at the facility could also change the circumstances that currently exist

at Respondent's facility and make the campaign impossible to restart.  Thus, absent a prompt

interim reinstatement of key union activist Massey, the unit will likely be deprived of the Union's

most articulate and committed supporter.  As a result, the Union's organizational drive is likely

---

[10] See Bloedorn v. Francisco Foods, Inc., d/b/a Piggly Wiggly, 276 F.3d 270, 299 (7th Cir. 2001);  Pye v. Excel Case Ready, 238 F.3d 69, 75 (1st Cir. 2001); NLRB v. Electro-Voice, Inc., 83 F.3d 1559, 1573 (7th Cir. 1996).

to be permanently stifled[11] and the Union's potential status as bargaining representative forever undermined.[12]

C.     The Balance Of Threatened Harm Favors The Grant Of Injunctive Relief

The proposed interim order will pose little harm to Respondent.  Massey was an effective employee that was never disciplined for poor work performance.  All the injunction would require is for Respondent to simply employ an employee who already has shown to be capable of performing his job.  Nothing in the proposed order limits Respondent's right to impose legitimate discipline.  Courts have recognized that an interim reinstatement order does not inherently interfere with the employer's legitimate entrepreneurial interest.[13]  In addition, while Massey allegedly was discharged for engaging in misconduct, it should be noted that Respondent

---

[11] See Schaub v. West Michigan Plumbing & Heating, Inc., 250 F.3d at 971; Pye v. Excel Case Ready, 238 F.3d 69, 75, (1st Cir. 2001); Sharp v. Webco Indus., Inc., 225 F.3d 1130, 1135, 1136, 165 LRRM 2353 (10th Cir. 2000); NLRB v. Electro-Voice, Inc., 83 F.3d 1559, 1573, 152 LRRM 2145 (7th Cir. 1996).

[12] See Arlook v. S. Lichtenberg & Co., Inc., 952 F.2d 367, 370, 373-74, 139 LRRM 2297 (11th Cir. 1992)(discrimination against union activists and stewards including "lodestars" of the campaign); Pascarell v. Vibra Screw Inc., 904 F.2d 874, 878-79, 134 LRRM 2458 (3d Cir. 1990)(discrimination against members of union bargaining committee); Asseo v. Centro Medico del Turabo, Inc., 900 F.2d 445, 454, 133 LRRM 3090 (1st Cir. 1990).

[13] See Pye v. Excel Case Ready, 238 F.3d 69, 75, (1st Cir. 2001); NLRB v. Electro-Voice, Inc., 83 F.3d 1559, 1573, 152 LRRM 2145 (7th Cir. 1996) ("The company always has the legal right to discipline an employee in a nondiscriminatory fashion for improper conduct."); Eisenberg v. Wellington Hall Nursing Homes, Inc., 651 F.2d 902, 906, 107 LRRM 2958 (3d Cir. 1981)("The employer will receive the benefit of the reinstated employees' labor in the interim.  If there is a serious question about the quality of any employee's future work performance he can be discharged when the question arises.").

treated him differently than other employees engaged in the same alleged misconduct and it was not until he was identified as the key Union supporter that Respondent discharged him.[14]

There can also be no serious argument that a cease and desist remedy, which does no more than require the Respondent to obey the law, poses any risk of irreparable harm to the Respondent.[15]  Furthermore, the mere ministerial burden of posting the court's order at its facilities, or of preparing the affidavit of compliance, cannot be said to outweigh the need to reassure the employees of their statutory rights and to guarantee full compliance with the terms of the decree.[16]

Finally, interim relief here is in the public interest.  "[T]he interest at stake in a section 10(j) proceeding is 'the public interest in the integrity of the collective bargaining process' . . . [and] [t]hat interest is placed in jeopardy when the protracted nature of Board proceedings threatens to circumscribe the Board's ability to fully remediate unfair labor practices."[17]

## V.   CONCLUSION

Based on the foregoing, Petitioner believes that the evidence in this proceeding, including the evidence that will be developed in the administrative record, will clearly demonstrate a strong likelihood of success on the merits of the Regional Director's administrative complaint allegations.  Wherefore, Petitioner prays that this Court grant the temporary injunctive relief

---

[14] Courts have reinstated employees pursuant to 10(j) despite misconduct where that defense was merely pretextual.  See Pye v. Excel Case Ready, 238 F.3d 69, 72 (1st Cir. 2001) (discriminatees called in sick under questionable circumstances).

[15] D'Amico v. U.S. Service Industries, Inc., 867 F. Supp. 1075, 1092 (D. D.C. 1994).

[16] A posting of the court's opinion does not require Respondent to admit to violating the Act before the Board adjudication.  See Bloedorn v. Teamsters Local 695, 132 LRRM 3102, 3109-3110 (W.D. Wisc. 1989).

[17] Bloedorn v. Francisco Foods, Inc., 276 F.3d at 300 (citations omitted).

requested in the instant Petition, pending the Board's final administrative adjudication of the matters pending before it.[18]

SIGNED at Indianapolis, Indiana, this 7th day of February 2011.

Respectfully submitted,

Rebekah Ramirez
Counsel for Petitioner
National Labor Relations Board, Region 25
Room 238, Minton-Capehart Federal Bldg.
575 North Pennsylvania Street
Indianapolis, Indiana 46204
Phone: (317) 226-5618
Fax: (317) 226-5103
E-mail: rebekah.ramirez@nlrb.gov

Lafe E. Solomon, Acting General Counsel

Barry J. Kearney, Associate General Counsel

Rik Lineback, Regional Director, Region 25

Richard J. Simon, Regional Attorney

---

[18] The 10(j) decree will terminate by operation of law upon the issuance of the Board's decision and order in the unfair labor practice case. See Barbour v. Central Cartage, Inc., 583 F.2d 335, 337 (7th Cir. 1978).

25